UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-cv-62102-JB

LANA HORNE,

    Plaintiff,

v.

ZIMMER BIOMET SPINE, INC.,

    Defendant.

                                  /

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Summary Judgment, ECF No. [101], and accompanying Statement of Material Facts, ECF No. [102] and Defendant's Motion for Summary Judgment, ECF No. [104], and accompanying Statement of Material Facts, ECF No. [103] (the "Motions"). Each party filed their Responses in Opposition to the Motions, as well as Replies. ECF Nos. [117], [119], [121], [122]. On March 19, 2026, the Court heard oral argument on the Motions. ECF No. [190].

Upon due consideration of the Motions, the arguments of the parties, the relevant legal authorities, and for the reasons explained below and stated at the oral argument which are incorporated herein, Plaintiff's Motion for Summary Judgment is **DENIED**, and Defendant's Motion for Summary Judgment is **DENIED.**

1

## I.   BACKGROUND

Plaintiff Lana Horne ("Plaintiff") filed this action alleging that she sustained damages from a defective Mobi-C artificial disc ("Device") manufactured by Zimmer Biomet Spine, Inc., ("Zimmer" or "Defendant").  ECF No. [65].  Plaintiff alleges that the Device's defect caused it to slip out of place after it was inserted in her spine resulting in an additional surgery to remove the Device.  *Id.*

### A. The Mobi-C Implant

The Device, manufactured by Defendant ZB Spine, is a multi-component device primarily featuring two metal endplates (i.e., an inferior and a superior endplate) and a polyethylene mobile insert located between the endplates.  *See* Defendant's Statement of Material Facts, ECF No. [103] ¶¶ 18, 21; Plaintiff's Counter-Statement of Material Facts,[1] ECF No. [159] ¶¶ 18, 21.  The Device's superior and inferior sides feature two rows of serrated edges which are referred to as "teeth."  *Id.*  After being developed in Europe, the U.S. Food and Drug Administration granted premarket approval for the two-level indication of the Mobi-C implant on August 23, 2013, as a Class III medical device.  ECF Nos. [103] ¶ 19, [159] ¶ 19.

The Medical Device Amendments ("MDA") regulate medical devices and categorizes medical devices into three classes – Class I, Class II, and Class III – based on the risk posed to the public.  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 315–17 (2008).  Class III devices receive the most federal oversight and must receive "premarket approval" which is granted only if the Food and Drug Administration ("FDA") finds

---

[1] On February 23, 2026, the Court granted Plaintiff's motion to clarify and amend her Counter-Statement of Material Fact.  ECF Nos. [159], [184].

that there is a "'reasonable assurance' of the device's 'safety and effectiveness[.]'" *Id.* at 318; 21 U.S.C. § 360c (a)(1)(C).   Premarket approval ("PMA") is an extensive process. *Id.* § 360e; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996) ( "'PMA' process is a rigorous one. Manufacturers must submit detailed information regarding the safety and efficacy of their devices, which the FDA then reviews, spending an average of 1,200 hours on each submission.").   After a device has been approved, the manufacturer is forbidden to change design specifications that affect safety or effectiveness without FDA permission. *See Riegel*, 552 U.S. at 319 (citing 21 U.S.C. § 360e(d)(6)(A)(i)).

### B. Plaintiff's Surgery

In August 2016, Plaintiff was injured in a car accident that aggravated her preexisting neck issues.   ECF Nos. [103] ¶ 2, [159] ¶ 2.   After being told that her condition was life threatening and that she risked paralysis if she did not undergo surgery to treat her neck injury, Plaintiff explored her surgery options.   ECF Nos. [103] ¶ 4, [159] ¶ 4.

On January 18, 2019, in Orlando, Florida, Plaintiff underwent surgery, and the Device was implanted as part of a two-level disc replacement at her C5-C6 and C6-C7. *See* ECF Nos. [103] ¶¶ 4, 6; [159] ¶¶ 4, 6.  Plaintiff attended a follow-up visit with the implanting physician in April 2019.  ECF Nos. [103] ¶ 7−8; [159] ¶ 7−8.

In early 2020, while Plaintiff was visiting family in Texas, she visited a sports medicine clinic for examination.  ECF Nos. [103] ¶ 9, [159] ¶9.  The Texas clinic recommended that she visit a spine and neck specialist who recommended that

Plaintiff undergo revision surgery. ECF Nos. [103] ¶¶ 9−10, [159] ¶¶ 9−10.

On June 18, 2020, Plaintiff underwent revision surgery whereby the Device was removed.  ECF Nos. [103] ¶ 11, [159] ¶ 11.  Plaintiff recovered in Texas with her son for close to a year and underwent various post-revision treatments including physical therapy and at-home treatments.  ECF Nos. [103] ¶ 12, [159] ¶ 12.

On September 14, 2024, Plaintiff filed this action alleging that the Device was defective and resulted in "chronic pain, sadness, depression, anxiety and requires chronic pain management and medication."[2]  ECF No. [65] ¶ 62.  Plaintiff asserts one cause of action alleging that the Device implant at the C6-C7 level contained a manufacturing defect, specifically stating that the Device's "serrated teeth" were defectively manufactured.  *See generally id*; ECF No. [101]; *see also* ECF No. [103-7].  She further alleges that her injuries, and subsequent revision surgery, have not only cost her thousands of dollars, but also post and future wage loss and pain and suffering.  ECF No. [65] ¶¶ 60−62.

## II.    THE INSTANT MOTIONS

Plaintiff argues that the Court should grant summary judgment as to liability because the Device was 1) defective, 2) the defect was present when the product left the manufacturing plant, and 3) the defect was the proximate cause of her damages. ECF No. [101].

Defendant argues that it is entitled to summary judgment for the following reasons. First, Defendant claims that because Plaintiff sought treatment, received

---

[2] The Third Amended Complaint is the operative complaint.  ECF No. [65].

treatment, underwent revision surgery, and recuperated in Texas, the Texas statute of limitations applies to Plaintiff's claims. ECF No. [104] at 8. Because Plaintiff filed her lawsuit after the Texas two-year limitation period expired, Defendant argues that it is entitled to judgment in its favor. *Id.*

Second, Defendant argues that Plaintiff does not have evidence of a manufacturing defect or that the alleged defect existed while the Device was still in the custody of the manufacturer. *Id.* at 9. Defendant asserts that the Device inspection records show that the Device was manufactured according to the approved FDA process and that the serrated teeth on the endplates were within the approved specifications. *Id.* Defendant also asserts that Plaintiff failed to show that the alleged defect resulted from a particular violation of a PMA requirement, a failure that is fatal to her claims. *Id.* at 11.

Third, Defendant argues that Plaintiff's claim fails for lack of expert testimony on medical causation. *Id.* at 13. Defendant states that Florida law requires expert testimony to establish that an alleged manufacturing defect was the proximate cause of a plaintiff's injury. *Id.* Specifically, Defendant argues that Mr. Drewry, an engineer who opined on the manufacturing defect, cannot testify as to medical causation, nor can Plaintiff's treating physicians. *Id.* at 13–19. Without evidence that links the Device's alleged defect to her injury, Plaintiff cannot satisfy an essential element, and her claim must fail as a matter of law. *Id.* at 17. [3]

---

[3] Defendant also argued that Plaintiff's claims were barred by a settlement agreement that Plaintiff entered in connection with an accident. *See* ECF No. [104] at 19–21. Defendant later abandoned this argument in its Reply, stating that it

In her Response, Plaintiff argues that she was never a resident of Texas and was simply there to visit her son. ECF No. [117] at 10. In addition, because the Device was implanted in Florida and had already failed while she was in Florida, Plaintiff contends that the Texas statute of limitation does not apply. *Id.* As to the evidence of defect, Plaintiff argues that the Court should deny Defendant's Motion because "[a] jury may take the expert testimony from Dr. Kuns, Dr. Beauregard and Troy Drewry and conclude by looking at the X-Rays and the Zimm[e]t specifications and determine that this is a manufacturing defect." ECF No. [117] at 20. As to the manufacturing defect, Plaintiff asserts that the testimony from her biomechanical expert, Troy Drewry, has shown that the Device was defective while still within Defendant's control and the Device was in fact defective "to a reasonable degree of bio-mechanical probability." *Id.* at 14−17. As to medical causation, Plaintiff again argues that a jury may come to conclusion as to medical causation by looking to the testimony of "Dr. Kuhns or Troy Drery or both." *Id.* at 18.

In its Reply, Defendant argues that Plaintiff overemphasizes this matter's connection to Florida and again reiterates that the Court should apply Texas law to whether Plaintiff's claims are time-barred. ECF No. [121] at 3. Next, Defendant argues that Plaintiff has no admissible evidence showing the existence of a manufacturing defect, or a specific violation of a PMA requirement. *Id.* at 5–8. Lastly, Defendant points out that Plaintiff has not disclosed a medical expert, nor have Plaintiff's treating physicians offered to give causation opinions. *Id.* at 9−11.

---

would reserve any arguments related to the settlement release for trial. *See* ECF No. [121] at 11.

## III.    LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is one with "'a real basis in the record,'" such that "a reasonable jury could return a verdict for the [nonmoving party]." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  To determine whether the movant has met this burden, courts view the movant's evidence and all factual inferences arising therefrom in the light most favorable to the non-movant. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)).  As to issues on which the non-moving party would bear the burden of proof at trial, it is sufficient for the movant to highlight a failure of proof concerning an essential element of the non-movant's case. *Celotex*, 477 U.S. at 322–23.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir.

7

2002); see also Fed. R. Civ. P. 56(e).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).  But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and granting summary judgment is proper.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion" *Torres v. Rock River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Inc. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).  The Court reviews each individual motion on its own merits, taking the facts on each motion in the light most favorable to the respective nonmovant.  *See Adega v. State Farm Fire & Cas. Ins. Co.*, No. 07-cv-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct. 16, 2009).  Cross-motions for summary judgment do not, in themselves, warrant the court in granting summary judgment "unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."  *Purcell v. City of Fort Lauderdale*, 753 F. Supp. 3d 1308, 1324 (S.D. Fla. 2024) (quoting *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

8

## IV.    ANALYSIS

### A.  Texas' Statute of Limitations Does Not Apply.

Texas applies a two-year statute of limitations in medical device tort cases such as this one, whereas Florida courts apply a four-year statute of limitations.  *See Shepherd v. Danek Med.*, 1999 WL 1129705, at *1 (S.D. Tex. Aug. 13, 1999); *Compare* Tex. Code Civ. Prac. & Remedies, § 16.003, *with* Fla. Stat. § 95.11(3)(a) (before amendment).[4]  Defendant contends that Texas' statute of limitations applies, and because this action was filed after the two-year period, it is barred.  *Id.* at 3.  This Court disagrees.

"When it exercises jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must apply the choice of law rules of the forum state to determine which substantive law governs the action."  *U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.,* 550 F.3d 1031, 1033 (11th Cir.2008).  Any conflict-of-laws analysis must first address if "a conflict actually exists."  *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009).  A "true conflict" (as opposed to a "false conflict") exists if two states possess conflicting policy interests in the outcome of the litigation.  *Tune v. Philip Morris Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000).  Here, both Florida and Texas have a conflicting interest.  As a result, a true conflict exists.

---

[4] Florida recently changed its statute of limitations for negligence claims to two years, Fla. Stat. § 95.11(5)(a). Because the new statute only applies to claims accruing on or after March 24, 2023, it does not apply to this case, which was filed on March 21, 2023. *See Williams v. Home Advantage Humana,* No. 8:23-CV-980-CEH-AAS, 2023 WL 4104520, at *1, n. 3 (M.D. Fla. May 31, 2023) ("Effective March 24, 2023, Fla. Stat. § 95.11, was amended to reduce the statute of limitations for negligence claims from four years down to only two years." (citing Fla. Stat. § 95.11(4)(a)).

To determine which state's statute of limitations apply, this Court looks to Florida's choice-of-law rules. *See Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins.,* 165 F. Supp.2d 1332, 1335 (S.D. Fla. 2001) (citing *LaFarge Corp. v. Travelers Indem.,* 118 F.3d 1511, 1515 (11th Cir.1997)) ("This case is before the court under exercise of its diversity jurisdiction. Therefore, the court must look to [ ] Florida's choice of law rules to determine the law applicable to this action."). Florida applies the "most significant relationship" test in tort cases as delineated in § 145 of the Restatement (Second) of Conflicts of Laws. *Grupo Televisa, S.A. v. Telemundo Communs. Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir.2007) (citing *Bishop v. Fla. Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980)). Under the most significant relationship test, the law of the state where the injury occurred applies "unless, with respect to the particular issue, some other state has a more significant relationship. . . to the occurrence and the parties." Restatement (Second) of Conflict of L. § 146; *see also Bishop,* 389 So.2d at 1001 ("The state where the injury occurred would, under most circumstances, be the decisive consideration in determining the applicable choice of law."); *Schenone v. Zimmer Holdings, Inc.,* No. 3:12-CV-1046-J-39MCR, 2014 WL 12619899, at *3 (M.D. Fla. Mar. 5, 2014) ("Because the device failed in Florida, Plaintiff's injury occurred in Florida and the law of Florida should control this case.").

The most significant relationship test examines four contacts to determine whether a state indeed has a significant relationship: a) "the place where the injury occurred b) the place where the conduct causing the injury occurred, c) the domicile,

10

residence, nationality, place of incorporation and place of business of the parties, and d) the place where the relationship, if any, between the parties is centered." *Grupo Televisa*, 485 F.3d at 1240 (quoting § 145). Additionally, § 145 advises that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* That said, in determining which state has the most significant relationship, the Court may not "simply add up the factors delineated in section 145(2)." *Judge v. American Motors, Corp.*, 908 F.2d 1565, 1569 (11th Cir. 1990).

Here, the Device was implanted while Plaintiff, a Florida resident, was living in Florida. ECF Nos. [103] ¶ 6, [159] ¶6. Although her revision surgery was in Texas, that appeared to be fortuitous given that she was there only to visit her son. *See, e.g.*, Restatement (Second) of Conflict of L. § 145 cmt. e ("[W]hen the place of injury ... is fortuitous ... the place where the defendant's conduct occurred will usually be given particular weight ...."). Thus, this factor falls in favor of applying Florida law.

As to the second factor, the Device's design or manufacture occurred in France. ECF Nos. [103] ¶¶ 18–19, 26, [159] ¶¶ 18–19, 26. As such, this factor does not weigh in favor of one forum or the other. As to the third factor, Plaintiff is a Florida resident, and Defendant is a Colorado resident. This factor does not favor Texas as neither party is from Texas. Finally, as to the last factor, the only relationship the parties have here involved the Device that was implanted in Plaintiff by a procedure that occurred in Florida.

Because Plaintiff was a Florida resident that received the Device in Florida, the Court finds the Florida law applies. The Court also notes that issues of liability

and damages for patients that receive medical care in Florida, from Florida physicians, and then continue to reside in Florida, gives Florida a legitimate interest in this case and its result.  Because Florida law applies and the action was filed within the state's statute of limitations, Defendant's Motion on this ground is **DENIED**.

### B.  There Are Genuine Issues of Material Fact as to Whether the Device Contained a Manufacturing Defect.

Defendant argues that summary judgment should be granted in its favor because Plaintiff has failed to establish an issue of triable fact as to the existence of a manufacturing defect. ECF Nos. [104] at 9–13, [121] at 5.  Additionally, it argues that Plaintiff cannot show that any alleged defect existed at the time the Device was in the manufacturer's control, or that a particular PMA requirement had been violated.  ECF Nos. [104] at 12, [121] at 8.  As to this issue, Plaintiff argues that summary judgment should be granted in her favor given the testimony of her doctors and expert show that the Device was defective.  ECF No. [117] at 4−8.

In order to prevail on a "manufacturing defect claim under Florida law, a plaintiff must prove that 1) the product was defective, 2) the defect existed at the time the product left the defendant-manufacturer's control, and 3) the defect proximately caused the plaintiff's injuries." *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1344 (S.D. Fla. 2019); *see also Colville v. Pharmacia & Upjohn Co.*, 565 F. Supp. 2d 1314, 1320 (N.D. Fla. 2008) ("In order to prevail in a products liability action brought under a theory of either *strict liability or negligence*, a plaintiff must demonstrate that the injuries complained of were caused by a defective product whose defect existed at the time of injury and at the time in which the product left the

12

manufacturer's control.") (emphasis added).    Since Plaintiff seeks to assert a manufacturing defect claim relating to a PMA-approved device, she must also show that "the defect resulted from a violation of a particular PMA requirement." *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1365 (M.D. Fla 2015) (citations omitted).

Here, Plaintiff's expert, Mr. Troy Drewry[5] concluded, based on a comparison of the Device with Defendant's design drawings, that the Device was not manufactured according to the design's measurement.  *Id.*  Specifically, Mr. Drewry concludes that the Device's "teeth" were defective in that they were not sharp and that the defect that would prevent a device from adhering to the bone.  Drewry Dep. 67:16–24, ECF No. [97-3].  Plaintiff also puts forth evidence that Defendant's representative brought the Device unopened directly from the manufacturing plant to the surgery. Beauregard Dep. 139:20–140:7, ECF No. [98-2].  Essentially, Plaintiff argues that because the Device did not leave the manufacturer's control, the defect arose while it was in its control.

Defendant counters Plaintiff's evidence with manufacturing records that show that both of the "teeth" contained on the Device's endplates were manufactured within the required design specifications and therefore not defective.  ECF Nos. [103-4] ¶¶24–25, [104] at 12, [121] at 6.  Defendant also relies on the declaration of one of their employees, Engineering Manager, Guillaume Quetier, who asserts that the

---

[5] Along with its Motion, Defendant also filed a Motion to Strike Mr. Drewery's testimony on *Daubert* grounds.  ECF No. [105].  The Court denied the Motion to Strike.  ECF No. [184].

"teeth" on the Device were measured and within the specifications required by the PMA.  ECF Nos. [104] at 12, [121] at 6.

Given the conflict between the evidence presented, the Court finds that a genuine issue of material fact exists as to whether the Device was defective.  Plaintiff has presented an expert that will testify to the alleged defect and that the defect resulted from a particular violation of a PMA requirement.  *See* Drewry Dep. 20:2−13, 20:24−21:14, 67:16−24, ECF No. [97-3].  That testimony is in direct conflict, of course, with Defendant's evidence.  Decl. of G. Quetier, ECF No. [103-4].  Given the conflict, the Court cannot grant summary judgment without weighing the evidence and determining the credibility of these witnesses, a function it cannot undertake at this juncture.  *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1350 (11th Cir. 2022) ("[W]hen determining whether there is a genuine issue of material fact that defeats summary judgment, we do not weigh conflicting evidence or make credibility determinations to resolve factual disputes"); *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224, 1237 (11th Cir.2010) ("Neither we nor the district court are to undertake credibility determinations or weigh the evidence"); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."); *Price v. Palm City Golf, LLC,* No. 24-14141-CIV, 2026 WL 691652 (S.D. Fla. Mar. 12, 2026) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) ("The Court may not weigh evidence or make credibility determinations at this [summary judgment] stage.").  Thus, the summary

14

judgment motions as to whether there is sufficient evidence to establish a manufacturing defect are **DENIED**.

### C. There Are Genuine Issues of Material Fact as to Medical Causation.

The only remaining question is whether Plaintiff's evidence of causation is sufficient to defeat Defendant's Motion. In order to prevail on a manufacturing defect claim, Plaintiff must show that "the defect proximately caused [her] injuries." *Salinero*, 400 F. Supp. 3d at 1344. Defendant argues that Plaintiff's claims must fail as a matter of law because 1) Plaintiff has not disclosed any medical causation expert, 2) Plaintiff violated Federal Rule 26(a)(2) by not properly disclosing the non-retained expert testimony of her treating physician, 3) Plaintiff's treating physicians declined to opine on medical causation, 4) Plaintiff's expert, Mr. Drewry, is not qualified to provide an opinion on medical causation, and 5) Plaintiff has no expert to rebut Defendant's medical causation expert. ECF No. [104] at 13−19. In sum, Defendant argues that evidence in the record is not sufficient for the trier of fact to conclude that Defendant's Device caused her injuries.

As an initial matter, and before addressing the sufficiency of Plaintiff's evidence, the Court notes that Defendant did not move to strike the testimony of Plaintiff's treating physicians, and the Court sees no basis to do so now. Defendants suffered no prejudice from the manner in which the testimony of the treating physicians was disclosed given that Defendant was able to depose the doctors with ample time.

Defendant, however, is correct on several other fronts. Plaintiff does not have

15

a designated  expert on *medical* causation.  In addition, Mr. Drewery, a biomechanical engineer, can only testify to the defect he identified in the Device.  Plaintiff does not appear to contest this.  ECF No. [117] at 18.  Instead, Plaintiff argues that it has presented sufficient evidence because the testimony of Mr. Drewry *in combination with* the testimony of Dr. Kuhns, one of Plaintiff's treating physicians, is sufficient for a jury to find that the defect in the Device caused her injury.  *Id.*

As noted above, Defendant argues that expert testimony is required to establish medical causation.  *See Payne v. C.R. Bard*, Inc., 2014 WL 1887297, at \*2 (M.D. Fla. May 12, 2014), *aff'd*, 606 F. App'x 940 (11th Cir. 2020)("Causation in medical device product liability cases also often requires expert evidence."); *Kilpatrick v. Breg, Inc.*, 2009 WL 2058384, at \*11 (S.D. Fla. June 25, 2009)(finding that the plaintiff's non-expert treating physicians could only testify as lay witnesses and that they "[could not] touch upon causation").  Defendant also posits that Plaintiff has no admissible medical causation testimony because no expert performed a differential diagnosis in formulating their opinion.  ECF No. [104] at 13–14.  In making this argument, Defendant relies on *Guinn v. AstraZeneca Pharms. LP*, 602 F.3d 1245, 1252–1253 (11th Cir. 2010) for the proposition that expert testimony is required.  *Id.*  But *Guinn* does not address the issue here, where there *is* an expert testifying as to the manufacturing defect and Plaintiff is relying on a combination of other witnesses to prove that the defect caused her to undergo an additional surgery, and as a result, an injury.  *Contra Guinn*, 602 F.3d at 1252–53.

To be sure, expert testimony would be needed to show that there is a defect in

the Device.  *Alexander v. Danek Med., Inc.*, 37 F. Supp. 2d 1346, 1349 (M.D. Fla. 1999) ("To prove a defective product, a defect must be proven by expert testimony.").  The Court denied the *Daubert* challenge to Mr. Drewry, and as such, Plaintiff will be able to advance expert testimony on the defect in the Device.  Defendant, however, makes another point that is not established in the authorities it relies upon.  That an expert is *required* as a matter of law to show that the alleged design defect, supported by expert testimony, also *caused* the injury.[6]  *See* ECF No. [104] at 13–16.

---

[6] Defendant's reliance on *Kilpatrick* is also unavailing. 2009 WL 2058384, at *11. There, after excluding the plaintiff's causation expert, the court found that the plaintiff could not rely on the testimony of his non-expert treating physicians for causation because they could only testify to matters regarding treatment. *Id.*  At any rate, the court did not opine as to whether the treating physicians' testimony could be combined with an expert's testimony to establish causation.  *Id.*

Defendant's other citations are also unpersuasive, as it confuses the requirement of expert testimony of a design defect with expert evidence connecting that defect to the injury.  *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1343 (S.D. Fla. 2019) (noting that the defendants' argument that the plaintiffs' claims should be dismissed due to lack of expert testimony fails because the court had not in fact excluded the plaintiffs' case-specific experts), *aff'd,* 995 F.3d 959 (11th Cir. 2021); *Payne v. C.R. Bard, Inc.*, No. 6:11-CV-1582-ORL-37, 2014 WL 1887297, at *3 (M.D. Fla. May 12, 2014), (granting the defendants' motion for summary judgment where the plaintiff could not point to expert testimony to establish a product defect *or* causation) (emphasis added) *aff'd,* 606 F. App'x 940 (11th Cir. 2015); *Wolicki-Gables v. Arrow Intern., Inc.*, 634 F.3d 1296, 1302 (11th Cir. 2011) (finding that the district court did not err in concluding that the plaintiffs were not entitled to a presumption that the device was *defectively manufactured*) (emphasis added); *Olmo v. Davol, Inc.*, 2017 WL 1367231, at *7 (S.D. Fla. April 10, 2017) (granting summary judgment where the plaintiffs failed to provide *any* admissible evidence that the defect causes the injuries) (emphasis added), *aff'd*, 710 F. App'x 861 (11th Cir. 2018); *Savage v. Danek Med., Inc.*, 31 F. Supp. 2d 980, 984 (M.D. Fla. 1999), (noting that the court was not reaching the issue of causation because the plaintiff showed no evidence of a defect) *aff'd,* 202 F.3d 288 (11th Cir. 1999); *Ramkelawan v. Globus Med. Inc.*, No. 5:18-CV-100-OC-30PRL, 2019 WL 8918551, at *3 (M.D. Fla. Dec. 10, 2019) (granting the defendant's motion for summary judgment after the court excluded the plaintiffs' causation expert and noting that the expert's opinions were the only evidence of causation relied on by the plaintiffs); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353,

17

That said, the lack of expert testimony is problematic. *See Pierre v. Intuitive Surgical, Inc.*, 854 F. App'x 316, 320 (11th Cir. 2021) ("In cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required to establish causation."); *Sumner v. Biomet, Inc.,* 434 F. App'x 834, 843–44 (11th Cir. 2011) (holding that district court "properly granted summary judgment" to the defendant on medical device product liability and negligence claims where there was no evidence of the defect); *Hughes v. Stryker Corp.*, 423 F. App'x 878, 881 (11th Cir. 2011) (affirming the district court's finding that the "interaction between a complex and technical medical device and the unique physiological and medical circumstances of the patient in which it is implanted is a subject on which no ordinary juror could rationally be expected to have knowledge."). That said, the Court is not convinced that *as a matter of law* Plaintiff should not be allowed to move forward with its claim given that it will now be able to present expert testimony on the defect and that the defect, the lack of sharpness, can be linked to the medical testimony that the Device was removed because it did not adhere to her bone  Indeed, Plaintiff's treating physician, Dr. Kuhns, testified that the Device had to be removed because it had not properly adhered to Plaintiff's bone. Kuhns Dep. 94:14−95:9, ECF No. [98-1].  Unlike the cases relied upon by Plaintiff, the defect at issue here is the same issue identified by her treating physician as the

---

1361 (M.D. Fla. 1999) (granting summary judgment where the plaintiff produced no evidence that the product was defective *or* that the defect caused her damages) (emphasis added).

reason the device failed and had to be removed.  The Court finds that this unique combination, although perhaps not particularly strong evidence, is sufficient to defeat summary judgment.  *See Fair Hous. Ctr. of the Greater Palm Beaches, Inc. v. Sonoma Bay Cmty. Homeowners Ass'n, Inc.*, No. 9:14-CV-80667-ROSENBERG, 2015 WL 5016836, at *3 (S.D. Fla. Aug. 25, 2015) (noting that expert assistance is not necessary where the facts at issue do not require specialized knowledge).  Indeed, Plaintiff will not have an expert to rebut Defendant's expert testimony that the failure to adhere was caused by other factors.  But the weighing of that evidence and the credibility of the witnesses will be up to the jury, or in the event that the testimony at trial is not sufficient, up to the Court at the conclusion of Plaintiff's case in chief.  All the same, the Court is not convinced that under the facts here, Plaintiff's claim should be dismissed as a matter of law.

## V.  CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment, ECF No. [101], and Defendant's Motion for Summary Judgment, ECF No. [104], are **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of March, 2026.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**